**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| LYNDA E. KORENSTRA, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 1:26-cv-00456 |
| START NEW SETTLEMENT, LLC d/b/a START NEW FINANCIAL, LLC, | JURY TRIAL DEMANDED |
| Defendant. | |

<u>**COMPLAINT**</u>

The Plaintiff LYNDA E. KORENSTRA ("Plaintiff"), by and through the undersigned, complains as to the conduct of START NEW SETTLEMENT, LLC d/b/a START NEW FINANCIAL, LLC ("Defendant") as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* the Indiana Credit Services Organization Act ("ICSOA") under Ind. Code § 24-5-15 *et seq.,* the Indiana Deceptive Consumer Sales Act ("IDCSA") under Ind. Code § 24-5-0.5 *et seq.,* as well as claims of Negligence, Breach of Contract, and Breach of Fiduciary Duty, stemming from Defendant's unlawful conduct.

**JURISDICTION AND VENUE**

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

1

3.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Southern District of Indiana and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Southern District of Indiana.

**PARTIES**

4.   Plaintiff is a consumer over 18 years of age residing in Fishers, Indiana, which lies within the Southern District of Indiana.

5.   Defendant is a credit repair organization and credit counseling service offering services to consumer for the purpose of resolving their debts through a variety of means to as to achieve a level of financial freedom and success otherwise absent. Defendant is a limited liability company organized under the laws of the state of Michigan with its principal place of business located at 5366 Plainfield Avenue NE, Suite B, Grand Rapids, Michigan 49525.

6.   Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

7.   In approximately July of 2021, Plaintiff was dealing with a consumer debt owed to Discover bank which she was looking for assistance in resolving.

8.   Plaintiff received an email solicitation from Defendant discussing its debt settlement services, which offered consumers the ability to resolve consumer debt for a fraction of what was owed.

9.   Plaintiff subsequently spoke with Defendant's representative over the phone regarding its services.

2

10. Upon speaking with Defendant's representative, Defendant explained the nature of its services and that Plaintiff would make monthly payments to Defendant, with which Defendant would attempt to resolve Plaintiff's Discovery debt.

11. Defendant represented that although its services would have some initial, temporary, and minor negative impact on her credit, once the debt was settled and payments made, her credit score would improve and be in a better position than it was before agreeing to use Defendant's services.

12. Defendant further repeatedly represented the efficacy of its services and its ability to achieve better results than its competitors.

13. Plaintiff thereafter agreed to utilize Defendant's services, and entered into a contract for the provision of such services.

14. Plaintiff then began making her monthly payments to Defendant, which totaled approximately $575.00 each month.

15. Defendant represented that maintaining these payments for approximately 3 years would result in the Discover debt being completely resolved and Plaintiff enjoying improved credit as a result.

16. Although Plaintiff was current on the Discover debt when it was enrolled in Defendant's program, Defendant instructed Plaintiff to cease paying on the Discover debt and to instead divert those payments to Defendant for assistance.

17. Unbeknownst to Plaintiff, diverted from her monthly payments for Defendant's services were $55 monthly charges for "Evergreen" services which, upon information and belief, were designed to purportedly provide assistance to consumers in the event they were ever sued on an enrolled debt.

3

18. Upon information and belief, Defendant crammed Evergreen's services into its own without adequate or meaningful disclosure, failed to clarify how much of Plaintiff's monthly payments would be going towards these "services," and the services at issue were completely unperformed, illusory, and useless to Plaintiff.

19. Upon further information and belief, Defendant retained portions of the monthly payments being diverted to Evergreen for its own benefit prior to performing any services for Plaintiff.

20. Defendant uses its relationship with Evergreen, and Evergreen's purported provision of litigation assistance to Defendant's clients, as a feeble and deceptive attempt to evade a variety of consumer protection statutes and regulations which prohibit Defendant's collection of advanced fees.

21. On or around March of 2022, Defendant purportedly reached a settlement on the Discover debt, and began diverting Plaintiff's monthly payments towards that settlement as well as its fees.

22. Defendant represented that Plaintiff would continue making her monthly payments of $575 until approximately July of 2024, at which point the Discover debt would be completely resolved and removed from Plaintiff's credit reports.

23. Plaintiff proceeded to make her payments until approximately July of 2024.

24. Throughout this entire time, and despite the only obligation Plaintiff enrolled in Defendant's program having purportedly been settled, Plaintiff was still assessed $55 monthly charges for Evergreen's services.

25. To whatever extent Evergreen's services were not completely fraudulent and illusory from the start, the services would have been rendered completely useless and unnecessary once a settlement had been reached, yet Defendant persisted in causing Plaintiff to be subjected to

4

thousands of dollars in charges for Evergreen's useless services which ultimately further lined its own pockets.

26. Furthermore, Defendant would have Plaintiff's settlement payments made via "2-day check," which resulted in Plaintiff incurring a $12 fee *each time* payment was made on the Discover settlement, despite far cheaper payment options being available.

27. Upon information and belief, Defendant receives a kickback from the provider of Plaintiff's dedicated account, tied to the amount in fees a consumer pays, and so Defendant deceptively and misleadingly causes consumers to incur unnecessary and inflated charges for payment methods that, had Defendant put its clients interests ahead of its own, would have been avoided.

28. After July of 2024, Plaintiff was informed by Defendant that its services were complete and the Discover debt was completely resolved.

29. Plaintiff had paid Defendant thousands of dollars for its services by the time they were "complete".

30. However, several months later in the Fall of 2024, Plaintiff was checking her credit reports, and noticed the Discover debt still being reported with a balance.

31. Plaintiff then contacted Defendant.

32. Defendant informed Plaintiff that she should contact Discover and have them update their reporting.

33. When Plaintiff spoke with Discover, she was told that there was never any settlement reached to resolve the debt completely, that her payments had been applied to the entire balance of the debt, and that Plaintiff still owed approximately $2000 on the debt.

34. Distressed and confused as to how this was possible given the nature of Defendant's services and representations, Plaintiff again contacted Defendant, who told Plaintiff it would look into the issue and be in contact.

35. A week later, Plaintiff spoke with Defendant, at which point Defendant came clean and admitted that they had made a mistake, the debt was never settled, and informed Plaintiff she still owed the $2000 balance on the Discover debt.

36. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

37. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant, pecuniary harm stemming from payments made in connection with useless and misrepresented services, further out of pocket expenses, dealing with the fallout of Defendant's conduct, denial of the benefit of her bargain, loss of time value of money, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations and debt settlement providers.

38. As a result of such conduct and the corresponding harm Plaintiff suffered, on or about April 28, 2025 and pursuant to Defendant's contract, Plaintiff filed an arbitration matter with JAMS, to which Defendant failed to respond and largely ignored, necessitating the instant litigation.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

39. Plaintiff repeats and realleges paragraphs 1 through 38 as though fully set forth herein.

40. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

6

41. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

42. At all relevant times, Defendant represented to Plaintiff, both directly and by implication, that successfully completing Defendant's program would, ultimately, result in the overall improvement of Plaintiff's credit history and score.

### a.  Violations of CROA § 1679b(a)

43. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

44. Defendant violated the above provisions of the CROA through its deceptive and fraudulent provision of services to Plaintiff. Defendant told Plaintiff that it settled the Discover debt, yet that was a blatantly false representation, as no settlement was actually reached. Defendant deceptively and misleadingly represented the results it had achieved in order to recoup its fees for unperformed services and in a manner contrary to the parties' contract and all representations it made regarding how its services are supposed to work.

45. Defendant further violated the above provisions by deceptively and misleadingly allowing Plaintiff to make payments on a "settled" debt for years that was not actually settled.

46. Defendant further violated the above provisions of the CROA through its deceptive and misleading conduct in cramming useless and illusory services into its own. Defendant crammed various third-party services into its own, including Evergreen's, without adequate or sufficient disclosure, all in an effort to divert consumers' monthly payments for unperformed and illusory services.

47. Defendant further violated the above provisions of the CROA through its deceptive and misleading conduct in allowing Plaintiff to continue to be charged for Evergreen's services despite such services being rendered redundant (or at least should have been rendered redundant had Defendant's services been performed in the manner they were represented).

48. Defendant further violated the above provisions of the CROA through its deceptive conduct in causing Plaintiff to be subjected to inflated charges for unnecessary payment methods. Defendant's conduct is indicative of its overarching pattern and practice of subjecting consumers to hidden and buried fees at every available opportunity.

49. Defendant violated the above provisions of the CROA through the deceptive and misleading nature of the representations made regarding its services. Defendant completely oversold and misrepresented its services, the timeline of results, as well as the overarching impact and nature of its services, *inter alia.*

50. Defendant violated the above provisions of the CROA through its deceptive business practices in contradicting its oral representations made to Plaintiff and consumers through its contractual language. Defendant represents its services one way when inducing consumers to sign up for its services, only to cut against such representations in its contract. Defendant seeks to

disclaim any and all oral representations it makes to consumers through its contract, which is a deceptive and fraudulent act given the extent to which CROA is applicable to the way in which an entity represents its services, both orally and through its contract with consumers.

51. Defendant violated the above provisions of the CROA through its deceptive representations that Plaintiff's best course of action would be to cease paying her creditors and instead divert those payments to Defendant.

52. Defendant further violated the above provisions of the CROA through its deceptive and misleading conduct in charging Plaintiff for services that were never completely performed. Defendant agreed to resolve Plaintiff's debt in its entirety, represented that it do so, and retained Plaintiff's payments as if it had done so, despite the debt not actually being settled.

### b.  Violations of CROA § 1679b(b)

53. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

54. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services were fully performed. Throughout the entire time Defendant strung Plaintiff along, it recouped fees for services which had not yet been fully performed, and ultimately retained thousands of dollars in payments for services it failed to complete.

### c.  Violations of CROA § 1679c

55. The CROA, pursuant to 15 U.S.C. § 1679c, outlines the nature and timing of disclosures that credit repair organizations must provide to consumers.

9

56. Defendant violated the above provisions of the CROA through its failure to provide the requisite disclosures.

### d. Violations of CROA § 1679d

57. The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirements for the contracts between consumers and credit repair organizations.

58. Defendant violated the above provisions of the CROA through its failure to comply with the CROA's contractual requirements.

### e. Violation of CROA § 1679f(b)

59. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

60. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded under the CROA. Defendant's contract contains a number of provisions seeking to disclaim the applicability of the CROA to its business despite the representations it makes to consumers and the inherent nature of its business and the implications derived therefrom. Defendant's contract further improperly includes a merger and integration clause in its contract which seeks to insulate itself from liability from the manner in which it represents its services to consumers outside of the contract and written agreement between the parties.

61. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, LYNDA E. KORENSTRA, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE INDIANA CREDIT SERVICES ORGANIZATION ACT

62. Plaintiff restates and realleges paragraphs 1 through 61 as though fully set forth herein.

63. Plaintiff is a "buyer" as defined by Ind. Code § 24-5-15-1.

64. Defendant is a "credit services organization" and provider of "debt settlement services" as defined by Ind. Code § 24-5-15-2(a) and Ind. Code § 24-5-15-2.5.

**a. Violations of Ind. Code § 24-5-15-5**

65. The ICSOA, pursuant to Ind. Code § 24-5-15-5(1), prohibits a CSO from charging or receiving "money or other valuable consideration before the complete performance of services that a credit services organization has agreed to perform for or on behalf of a consumer . . ."

66. Defendant violated § 24-5-15-5(1) in much the same way it violated § 1679b(b) of the CROA.

67. The ICSOA, pursuant to Ind. Code § 24-5-15-5(3), defines as a deceptive act "to make or to advise a buyer to make a statement with respect to the buyer's creditworthiness, credit standing,

or credit capacity that is: false or misleading; or that should be known to by the exercise of reasonable care to be false or misleading . . . to a person that has extended credit to the buyer."

68. Defendant violated § 24-5-15-(3) through its counseling and advising Plaintiff to make statements to her creditors that were false, misleading, or which should have been known to be false or misleading.

69. The ICSOA, pursuant to Ind. Code. § 24-5-15-5(4), prohibits a credit services organization from making or using "a false or misleading representation in an offer to sell or a sale of the services of a credit services organization."

70. Defendant violated § 24-5-15-5(4) in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

71. Defendant further violated § 24-5-15-5(4)(c) through its attempts to obtain Plaintiff's waiver of the rights provided by a state or federal law, in much the same way it violated § 1679f(b).

### b.  Violations of Ind. Code § 24-5-15-6

72. The ICSOA, pursuant to Ind. Code § 24-5-15-6, outlines the disclosures a CSO must provide prior to providing services to a consumer.

73. Defendant violated § 24-5-15-6 by failing to provide the disclosures required by Indiana law.

### c.  Violations of Ind. Code § 24-5-15-7

74. The ICSOA, pursuant to Ind. Code § 24-5-15-7, outlines the requirements for contracts between consumers and credit services organization.

75. Defendant violated § 24-5-15-7 through its failure to provide the information required in the contract with Plaintiff.

WHEREFORE, Plaintiff, LYNDA E. KORENSTRA, respectfully request that the Honorable

Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Ind. Code § 24-5-15-9(1);

c. Awarding Plaintiff punitive damages pursuant to Ind. Code § 24-5-15-9(1);

d. Awarding Plaintiff costs and reasonable attorney fees, pursuant to Ind. Code § 24-5-15-9(1); and,

e. Awarding any other relief the Honorable Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT

76. Plaintiff repeats and realleges paragraphs 1 through 75 as though fully set forth herein.

77. Plaintiff is a "person" as defined by Ind. Code § 24-5-0.5-2(a)(2).

78. Defendant is a "supplier" as defined by Ind. Code § 24-5-0.5-2(a)(3).

79. Defendant's conduct directed towards and services provided to Plaintiff were "consumer transactions" as defined by Ind. Code § 24-5-0.5-2(a)(1)(C).

80. The IDCSA states:

> "A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." Ind. Code § 24-5-0.5-3(a).

> "Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier are deceptive acts: (1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or reasonably should know it

13

does not have. (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not. (28) A violation of IC 24-5-15.

81. Defendant violated the above provisions of the IDCSA in much the same way its conduct violated the provisions of the CROA and ICSOA discussed above. Defendant's conduct is part of a scheme, artifice, and device with intent to defraud Plaintiff given the extent to which Defendant intentionally misrepresents the nature and efficacy of its services as well as the fees surrounding its services, and subsequently begins charging consumers for its deficient and misrepresented services before consumers can become wise to the deceptive, misleading, and fraudulent nature of Defendant's services.

WHEREFORE, Plaintiff, LYNDA E. KORENSTRA, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff damages, in an amount to be determined at trial, as provided under Ind. Code § 24-5-0.5-4(a)(1)(2);

c. Awarding Plaintiff costs and reasonable attorney fees as provided under Ind. Code § 24-5-0.5-4(a);

d. Awarding Plaintiff treble damages pursuant to Ind. Code § 24-5-0.5-4(a); and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT IV – NEGLIGENCE

82. Plaintiff restates and realleges paragraphs 1 through 81 as though fully set forth herein.

83. Defendant owed Plaintiff a duty of care to provide its represented financial services in a competent manner. Defendant further represented to Plaintiff that it would provide her certain services in association with the services it was agreeing to perform. In so doing, Defendant

14

assumed an extra-contractual duty of care which it owed to Plaintiff to perform such services. Defendant breached its duties owed Plaintiff through the negligent provision of services to Plaintiff, including its gross negligence and incompetence in suggesting that Plaintiff had resolved a debt, allowing her to make payments over the course of several years, only for no actual settlement to ever have been reached. Defendant's negligence has proximately harmed Plaintiff in a number of respects, including financially and emotionally.

WHEREFORE, Plaintiff, LYNDA E. KORENSTRA, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a.   Enter judgment in Plaintiff's favor and against Defendant;

b.   Award Plaintiff her actual damages in an amount to be determined at trial;

c.   Award Plaintiff equitable relief, including enjoining Defendant from further violations of law;

d.   Award Plaintiff costs and reasonable attorneys' fees; and,

e.   Award any further relief deemed equitable and just.

## COUNT V – BREACH OF CONTRACT

84. Plaintiff restates and realleges paragraphs 1 through 80 as though fully set forth herein.

85. Defendant breached the underlying agreement between the parties in several material respects.

86. Defendant breached the underlying agreement through its failure to perform its services in the manner it contractually agreed to do so, through its receipt of fees for services in a manner contrary to its contract, and through its general frustration of the contract's underlying purpose through its completely deficient provision of services.

87. Defendant further breached the implied covenant of good faith and fair dealing through its deficient provision of misrepresented and incomplete services to Plaintiff.

15

WHEREFORE, Plaintiff, LYNDA E. KORENSTRA, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages; and,

d. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT VI – BREACH OF FIDUCIARY DUTY

88. Plaintiff restates and realleges paragraphs 1 through 87 as though fully set forth herein.

89. Defendant owed Plaintiff a fiduciary duty arising out of the nature of their relationship. Defendant was purporting to provide financial services to Plaintiff utilizing a significant portion of Plaintiff's incoming capital, inherently rendering it her fiduciary.

90. Defendant breached its fiduciary duties owed Plaintiff given the nature of the "services" it provided Plaintiff. Despite purporting to have Plaintiff's best interest in mind, Defendant persistently and routinely provided services designed to enrich itself and third parties at Plaintiff's expense. Defendant further breached its fiduciary duty by telling Plaintiff it had resolved a debt which it, in fact, had not. Defendant further breached its duties by utilizing fraudulent and deceptive pretenses and misrepresentations regarding the parameters of its services so as to induce Plaintiff's utilization of Defendant's services, and further breached its duties to act in Plaintiff's best interest which it failed to do through its unlawful and deficient provision of services which sought to put its own interests in receiving as much money as possible from Plaintiff's interest in receiving some sort of benefit in exchange for the thousands of dollars she paid Defendant. Defendant completely disregarded the fiduciary duties it owed Plaintiff, and Defendant's breach of such duties caused Plaintiff significant financial harm and emotional distress.

WHEREFORE, Plaintiff, LYNDA E. KORENSTRA, respectfully requests that the Honorable

Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages;

d. Award Plaintiff reasonable attorney's fees and costs;

e. Enjoining Defendant from continuing its unlawful conduct; and,

f. Awarding any other relief as the Honorable Court deems just and appropriate.

<table>
<tr><td>Dated: March, 6 2026</td><td>Respectfully submitted,</td></tr>
</table>

s/ Nathan C. Volheim (Lead Attorney)
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Southern District of Indiana
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com

s/ Eric D. Coleman
Eric D. Coleman, Esq. # 6326734
Counsel for Plaintiff
Admitted in the Southern District of Indiana
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(331) 307-7648 (phone)
(630) 575-8188 (fax)
ecoleman@sulaimanlaw.com